# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

**KIMBERLY HARRIS**                                                    **PLAINTIFF**

**V.**                          **CASE NO. 2:05CV126**

**TUNICA COUNTY, MISSISSIPPI and**
**TUNICA COUNTY SHERIFF'S DEPARTMENT**                 **DEFENDANTS**

## MEMORANDUM OPINION

This cause comes before the court on the defendants' motion [72] for partial summary judgment on the plaintiff's claim that her termination violated the First Amendment and her claim that her termination violated public policy of the State of Mississippi. Having reviewed the memoranda and submissions, the court is prepared to rule.

The plaintiff, Kimberly Harris, was an employee of Tunica County, working as a jailer at the Tunica County Sheriff's Department ("Sheriff's Department"). Tunica County is a political subdivision of the State of Mississippi. She was employed with the Sheriff's Department from November 2003 until June 2, 2005, as a jailer in the juvenile detention facility. On Ms. Harris' initial employment application in August 2003, she stated that she had received a high school diploma. Ms. Harris asserts that she took the General Equivalency Diploma ("GED") test in high school but never received any further information after taking the test, causing her to believe that she had a diploma. Ms. Harris completed a rehire application in December 2003, on which she again stated that she had received a high school diploma. In July 2004, the Sheriff's Department determined that Ms. Harris was one of five employees without a high school diploma or a GED. Ms. Neketa Dean of the Internal Affairs Department ("Internal Affairs") informed Ms. Harris that

she would need to obtain a GED. In the defendants' 30(b)(6) deposition, the representative stated that as long as the employees were actively working to obtain a GED, no employees were to be terminated for failure to have a high school diploma or GED.

On March 23, 2005, an incident involving two juvenile detainees and Officer Sheila Phipps ("Phipps") occurred while Ms. Harris was working. The daughters of Marilyn Young were at the juvenile detention facility and Ms. Young had instructed her daughters not to speak to the police while she was not present. Later, Ms. Young filed a complaint alleging that Phipps had screamed and cursed at her children after she left the room because they obeyed their mother's instructions and refused to speak to anyone, including Officer Phipps. Ms. Harris was questioned by Internal Affairs about the incident, and she confirmed that Ms. Young had cursed at the children and treated them in an unprofessional manner, contrary to the reports of Juvenile Administrator Norma Turner, Phipps, and Detective Rouse, all of whom disputed Ms. Young's allegations. Ms. Harris alleges that Norma Turner and Major Leron Weeks asked her to lie about witnessing the incident, but that she refused to do so.

In April 2005, the Sheriff's Department began preparation for state jail certification. Ms. Harris became the subject of an Internal Affairs investigation because she was now one of four employees without a high school diploma or a GED. Internal Affairs reviewed her personnel files and discovered that she had improperly stated her education level on her applications. On April 14, 2005, Ms. Harris met with a review board to discuss the incomplete paperwork in her personnel file, particularly her lack of documentation regarding her GED. The review board's recommendation was that Ms. Harris be offered the option to resign or be terminated. However, Ms. Harris was suspended instead. While suspended, Ms. Harris filed a charge of sex

discrimination with the EEOC. She also retook the GED, but failed. Ms. Harris returned to work on May 2, 2005, and was told to continue taking the GED until she passed. Thereafter, at another meeting on June 2, 2005, Ms. Harris was given the option to resign or be terminated from her position at the Sheriff's Department. That day, Ms. Harris was terminated. The reasons for the termination are unclear. The defendants alternately assert that Ms. Harris was terminated because she never provided any paperwork establishing that she had obtained a GED and that Ms. Harris had requested a job transfer, indicating her dissatisfaction with her job. Ms. Harris asserts that she was told that she was being terminated for taking food to inmates and because she filed a charge of sex discrimination. Ms. Harris believes she was fired in retaliation for her refusal to recant her statement about Officer Phipps. Ms. Harris filed a second charge of discrimination with the EEOC on June 8, 2005, alleging that she was terminated in retaliation for filing her initial claim of discrimination with the EEOC.

## ANALYSIS

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing the evidence, this Court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105

(2000). In so doing, the Court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 120 S.Ct. at 2110.

The plaintiff alleges that she was terminated in violation of her First Amendment rights because she refused to lie to protect a coworker. In order to determine whether plaintiff Harris is entitled to constitutional protection, this court must first determine that Ms. Harris spoke as a citizen on a matter of public concern. *Garcetti v. Ceballos*, ---U.S.---, 126 S.Ct. 1951, 1958, 164 L.Ed. 2d 689 (2006). If the employee has spoken as a public citizen on a matter of public concern, the question then becomes whether the government has an adequate justification for treating an employee differently from any other member of the public. *Id*. The employee's speech must have also motivated the government's action, in this case, the plaintiff's termination. See *Harris v. Victoria Independent School District*, 168 F.3d 216, 220 (5th Cir. 1999).

Ms. Harris made statements about the incident on March 23 pursuant to an Internal Affairs investigation that was instigated by a letter from Ms. Young. The defendants allege that these statements were made pursuant to Ms. Harris' official duties as a jailer at the juvenile detention facility; therefore, under *Garcetti v. Ceballos* her speech cannot be protected speech made as a citizen regarding a matter of public concern. However, *Garcetti* notes:

> "Employees in some cases may receive First Amendment protection for expressions made at work. Many citizens do much of their talking inside of their respective workplaces, and it would not serve the goal of treating public employees like "any member of the general public," to hold that all speech within the office is automatically exposed to restriction."

126 S.Ct. at 1959.

In *Garcetti*, the Supreme Court held that Ceballos, a deputy district attorney, was not entitled to First Amendment protection because his expressions were made pursuant to his duties

4

as calendar deputy. *Id*. at 1959-60. Part of his job requirement was to write memos advising his superior about how to proceed with pending cases, and Ceballos did not dispute that he wrote the memorandum pursuant to his job duties. *Id*. The facts of *Garcetti* are distinguishable from the instant matter, as Ms. Harris was simply a jailer at the juvenile detention facility. Her job description did not entail supervision of other employees or monitoring the behavior of other employees, nor did it include initiating or participating in Internal Affairs investigations. Therefore, her statements to the Internal Affairs investigators were not made pursuant to her official job duties. Her statements were made as a witness to an alleged incident of officer misconduct.

This case is more analogous to the factual scenario in *Harris v. Victoria Independent School District*, 168 F.3d 216 (5th Cir. 1999). In *Victoria*, the Fifth Circuit found that teachers on a committee who made comments regarding improvements that should be made in the school district were speaking on a matter of public concern. The defendants in *Victoria* asserted that the plaintiffs spoke in their roles as employees when they made their comments as committee members, but the court rejected that argument and stated, "By protecting the Plaintiff's speech when the administration requested them, as committee members, to speak truthfully on the school's progress, we are protecting the integrity of the truth seeking process." *Id*. at 222. (internal quotes omitted).

This court looks to the content, form, and context of Ms. Harris' speech in determining whether her speech was on a matter of public concern. Similar to the scenario in *Victoria*, the context and form of Ms. Harris' speech support a finding that her speech was on a matter of public concern because her speech was solicited pursuant to an Internal Affairs investigation, a

5

truth seeking process. To allow an employee to be terminated for speaking within the confines of a truth seeking investigation would frustrate the fact-finding process. The content of her speech also weighs in support of a finding that her speech was on a matter of public concern. The defendants have not alleged that these statements were made in regards to an underlying personal dispute, or that Ms. Harris was engaged in any controversy with her employer prior to her statements.

In considering whether the government employer has adequate justification for treating the employee differently from the average citizen, the court finds that the balance also weighs in favor of the plaintiff. While an employer has a vested interest in maintaining a harmonious and professional working environment, the court cannot find that maintaining a harmonious working environment outweighs a search for the truth.

Finally, the timing of the plaintiff's suspension and termination in relation to the incident involving Officer Phipps gives adequate rise to the possibility that her failure to obtain a GED was a pretext for her termination and that her refusal to recant her statements may have motivated the Sheriff Department's decision. Since the plaintiff has met the burden of establishing a prima facie case of First Amendment retaliation, the defendants' motion for summary judgment on the plaintiff's First Amendment claim is denied.

The defendants also allege that the plaintiff cannot sustain her public policy claim under Mississippi law. The defendants reiterate that Mississippi is an employment at-will state; therefore, employees without employment contracts may be terminated for any reason at all. The Mississippi Supreme Court has created two public policy exceptions to the employment at-will doctrine:

1) an employee who refuses to participate in an illegal act as in *Laws* shall not be barred by the common law rule of employment at will from bringing an action in tort for damages against his employer; and 2) an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing an action in tort against his employer.

*McArn v. Allied Bruce-Terminix Company, Inc.*, 626 So.2d 603, 607 (Miss. 1993.)

The plaintiff incorrectly argues that *McArn* only requires an illegal act and not a criminal act in order to support the public policy exception. In *Hammons v. Fleetwood Homes of Mississippi, Inc.*, 907 So.2d 357, 360 (2004), the Mississippi Court of Appeals states that the "applicability of the exception does not require that a crime has already been committed, but it does require that the acts complained of warrant the imposition of criminal penalties, as opposed to mere civil penalties." In this instance the plaintiff has alleged that the Sheriff's Department requested that she recant her truthful statements made to Internal Affairs investigators. If Mrs. Harris had recanted her statements at the direction of her employer, Ms. Harris could be subjected to penalties for obstruction of justice. The defendants' motion for summary judgment on the plaintiff's public policy claim is denied.

ACCORDINGLY, the defendant's motion [71-1] is DENIED. The defendants' motion for summary judgment on the plaintiff's First Amendment retaliation claim is DENIED and the motion for summary judgment on the plaintiff's public policy claim is DENIED.

This the 1st day of February, 2007.

                                    **/s/ Michael P. Mills**
                                    **UNITED STATES DISTRICT JUDGE**